STATE, CHRISTOPHER F. STAATES AND JOHN F. HOAGLAND, PROSECUTORS, v. INHABITANTS OF THE BOROUGH OF WASHINGTON, IN THE COUNTY OF WARREN.

1. A borough having by its charter the exclusive power to license inns and taverns, and dealers in spirituous and malt liquors, and to pass such by-laws and ordinances for the peace and good order of the borough as they may deem expedient, not repugnant to the constitution and laws of the United States, or of this state, may, by ordinance, prohibit the sale of such liquors in licensed houses after the hour of ten o'clock in the evening.

2. Such ordinance affecting the lawful business of the prosecutors, is reviewable in this court.

3. A writ of *certiorari* will be allowed where the prosecutors are included in the descriptive words of the ordinance, when its restraints on their business have been enforced against them, causing pecuniary loss, and they have submitted to it without an action and conviction.

4. Where a charter requires that an ordinance shall not be passed unless it be introduced at a previous meeting of common council, it cannot be passed at an adjourned meeting. An immaterial change in the title or body of the ordinance will not be affected by this provision.

5. Where the charter authorizes a penalty of fine or imprisonment for breach of ordinances, a penalty of a fine and forfeiture of license is illegal, excessive and annuls the ordinance.

On *certiorari* to the defendants to review an ordinance entitled "An ordinance concerning inns and taverns and dealers in spirituous and malt liquors." in the borough of Washington, dated May 9th, 1868.

Argued at June Term, 1882, before Justices SCUDDER and KNAPP.

For the prosecutors, *A. C. Smith.*

For the defendants, *O. Jeffery.*

The opinion of the court was delivered by

SCUDDER, J. The first section of the ordinance returned

with the writ ordains that no person or persons, within the corporate limits of the borough, on the first day of the week, commonly called Sunday, shall keep open any place or places where spirituous or malt liquors are kept for sale, or sell, give or in any wise dispose of any such spirituous or malt liquors on the first day of the week, commonly called Sunday, under penalty of $20 and forfeiture of license, if any they have. The second section ordains that no person or persons shall sell, or in any wise dispose of or expose for sale, any malt liquors, beer or cider, at any time of the day after the hour of ten o'clock in the evening, on any day after the ordinance shall take effect, and every person who shall offend against the provisions of this section of this ordinance, on conviction thereof before the mayor or any justice of the peace of the borough, shall pay a fine of $5 and the costs of prosecution, and shall likewise be subject to the forfeiture of any license which such person may have, by the common council of said borough.

The prosecutors have a license from the common council to keep an inn and tavern in said borough, and the writ is brought to determine the validity of this ordinance.

The defendants first make the motion to dismiss the writ of *certiorari*, because the prosecutors are not entitled to it, having never been convicted under the ordinance. But it is admitted in the proofs that a resolution was passed by the common council on Monday, May 1st, 1882, to the effect that all hotels and saloons in said borough should close their bars at ten o'clock in the evening of each day thereafter, and that ordinance No. 5, by which title the above ordinance is called, would be strictly enforced thereafter; that the borough police were instructed to notify the proprietors of the hotel, C. S. Staates and John K. Hoagland; and that John Rubby, a policeman, on Tuesday, May 2d, 1882, notified the prosecutors, by order of council, to close their bar at ten o'clock thereafter; that they did close it on Tuesday and Wednesday evenings following, and thereby lost money. These prosecutors are included in the descriptive words of this ordinance;

they have been affected by its restraints on their business which have been enforced against them; and they have, as they allege, been subjected to pecuniary loss by the resolution and order of common council against them. This is sufficient to entitle them to the writ of *certiorari* to determine whether the ordinance and the enforcement of it, are in excess of authority given by the charter, without violating its provisions and inviting a conviction under it. *State, Gregory, Taylor et al., pros.,* v. *Jersey City,* 5 *Vroom* 390; *State, Danforth, pros.,* v. *City of Paterson,* 5 *Vroom* 163, *State, Montgomery et al., pros.,* v. *City of Trenton,* 7 *Vroom* 79; *State* v. *Jersey City,* 5 *Dutcher* 170.

The second section of this ordinance had not been enforced in the borough until the resolution was passed on May 1st, 1882, and the prosecutors were then challenged to obey or contest its legality.

They first allege that they are duly licensed by the mayor and common council to sell spirituous and malt liquors in the borough of Washington, according to law, and after granting such license, the mayor and common council had no power to pass or enforce an ordinance prohibiting the prosecutors from selling or disposing of spirituous or malt liquors after the hour of ten o'clock in the evening, as contained in ordinance No. 5.

The power to license is found in section 25 of the charter, approved February 20th, 1868. The common council have there given to them the sole and exclusive right and power of licensing and assessing every inn-keeper, tavern-keeper and retailer of spirituous, malt or vinous liquors, within said borough, subject to the same provisions, and in like manner as the same is or may be lawfully done by the Courts of Common Pleas in this state.

The Courts of Common Pleas have never exercised, and do not possess the authority to limit the hours of each day in which the bars of licensed inns and taverns may be kept open for the sale of spirituous, malt or vinous liquors. It is manifest that the like manner of licensing inns and taverns in-

tended in this charter, relates to the formalities of the application for, and the granting of, licenses in the discretion of the common council of this borough, as the same are done in the Courts of Common Pleas in this state, under the act concerning inns and taverns; and that under this section of the charter, the common council cannot, by ordinance or resolution, prohibit the sale of liquors in licensed inns and taverns after the hour of ten o'clock in the evening. It is, however, claimed that this may be done under the provision in section 8 of the charter, that it may be lawful for the common council, among other things, to pass such by-laws and ordinances for the peace and good order of said borough as they may deem expedient, not repugnant to the constitution or laws of the United States, or of this state. It must be conceded, that whatever this may mean, these prosecutors took their licenses from the common council, subject to the authority vested in the council. Notwithstanding the licenses granted, which gave certain rights to inn-keepers and tavern-keepers, the council may limit the exercise of those rights if they deem such limitation expedient for the peace and good order of the borough, if it be not repugnant to constitutional limitations or prohibitory statutes. There is no constitutional right, where a license is granted, to sell every day and every hour in the day. General statutes have been passed restraining such sales on Sundays and election days, and every license is taken subject to those exceptions. So in this case, the charter which gives the right to the common council to license, excepts from the general effect of the license granted the power to limit and control it for the peace and good order of the borough, without taking away any vested or constitutional right. It is merely the reservation of a police power, which the common council may exercise as they deem expedient for the good order and government of the borough, of which they cannot divest themselves by granting licenses to inn-keepers. The exercise of this police power, as they may deem expedient when it causes pecuniary loss to individuals in a lawful business, is not, however, an arbitrary power to be measured by

their own will or judgment, but it is a *quasi* judicial act, subject to review by this court, and must be in every case reasonable in the restraints put upon those who are acting by legislative or other legal authority in the business of selling spirituous liquors or in any other business. They may not make police regulations that will, in effect, prohibit such sales, or unreasonably interfere with them, but they may impose reasonable regulations for the peace and good order of the community. The reasonableness of the regulation or ordinance must depend on the facts of each case. An ordinance closing all bars for the sale of spirituous liquors at an early hour, might be reasonable in a small retired town where the public travel and convenience would not require later accommodation, and the only purpose in keeping them open after that time would be to encourage tippling, drunkenness, disorder and other vices; while such ordinance would be unreasonably restrictive in cities or thoroughfares where public travel demands that places be kept open for refreshment at later hours. In every case a large discretion must be given to the governing body who are charged with the responsibility of maintaining the peace and good order of the community; but in no case will it be free from the supervisory control of this court, which must conserve individual rights, while those of the public are carefully guarded. Both are effected by keeping all municipal bodies within the terms of their charters. The question, then, which is presented by this objection of the prosecutors is, whether this ordinance, forbidding them to sell or in any wise dispose of, or expose to sale any malt liquors, beer, or cider at any time of the day after the hour of ten o'clock in the evening, is a reasonable regulation for the peace and good order of a small retired town like the borough of Washington, and will its effect be to prevent disorder, disturbance and breach of the peace? In the absence of proof to the contrary, we should sustain the action of the common council, who say that it is expedient for these purposes. This conclusion is not without express authority. In 1 *Dill. on Mun. Corp.*, § 400 (333), the author says: "Under a

general power to pass 'any other by-laws for the well-being of the city,' its council may, by ordinance, prohibit saloons, restaurants and other places of public entertainment, to be kept open after ten o'clock at night.   The objections that such a by-law was unreasonable, and deprived the citizens of the constitutional right of acquiring property, were considered not to be well taken.   It regulates, but does not deprive the party of his rights."   He cites the following authorities, and an examination of them sustains the statements in the section quoted:  *State* v. *Freeman*, 38 *N. H.* 426 ; *State* v. *Clark*, 8 *Fost.* 176 ; *Morris* v. *Rome*, 10 *Ga.* 532 ; *Hudson* v. *Geary*, 4 *R. I.* 485 ; *State* v. *Welch*, 36 *Conn.* 215 ; *Platteville* v. *Ball*, 43 *Wis.* 488.

The second reason assigned is connected with the first reason already considered, with some immaterial variation. The third is because the ordinance (No. 5) was ordained and passed on the same day, and at the same time that it was introduced, having been amended the next meeting after being introduced, and passed at the same meeting when it was amended, whereas it should have been passed at the next meeting of council.   In section 8 of the charter, defining the duties and powers of common council, including those relating to the peace and good order of the borough, the last proviso is, that no such by-law or ordinance shall be enacted or passed, unless the same shall have been introduced before the common council at a previous meeting.

On May 2d, 1868, at a meeting of council, an ordinance was presented entitled an ordinance concerning inns and taverns, and *retailers* of spirituous and malt liquors, which was received and referred to the committee on license.   The council adjourned to meet Saturday, May 9th, 1868.   On May 9th, 1868, a meeting was held, the above ordinance was read and passed.   It was afterwards reconsidered at the same meeting, and amended by striking out the word " retailers," and inserting " dealers " in the title of the ordinance.   The amendment in the title of the ordinance was immaterial, as no change was made in the body of the ordinance, and the title was only

altered to make it agree more nearly with the purport of the two sections. The difference between an immaterial change in the title of an ordinance, and a material alteration in the body of it, is shown in *State* v. *Jersey City*, 2 *Dutcher* 448, and *State, Ackerman, pros.*, v. *Town of Bergen*, 4 *Vroom* 39. This part of the objection is without force, but another part is more important. It was not introduced before the common council at a previous meeting. There are two kinds of meetings recognized and provided for in the charter—stated meetings and special meetings. An adjourned meeting of either kind is a continuation of the same meeting, and at such adjourned meeting the council may do any act which might have been done if no adjournment had taken place. The meeting of May 2d, at which the ordinance was introduced, was not a meeting previous to that of May 9th, at which it was passed, but a continuation of the same meeting; and as the ordinance could not have been passed on May 2d, neither could it be passed on May 9th. *State* v. *Jersey City*, 1 *Dutcher* 309; *People* v. *Bachelor*, 22 *N. Y.* 133; *Scadding* v. *Lorant*, 5 *L. & E.* 16; 1 *Dill. on Mun. Corp.*, § 287 (225.)

But a more serious defect is found in the exception to the penalty of the second section of this ordinance. The charter prescribes, in section 8, that the common council may enforce the observance and obedience of all such by-laws and ordinances by enacting penalties for the violation thereof, either by imprisonment not exceeding seven days, or by fine not exceeding $50. The second section of the ordinance imposes the penalty of a fine of $5 and costs of prosecution, and that the person offending against the provisions of this section of the ordinance shall likewise be subject to the forfeiture of any license which such person may have, by the common council of said borough.

Instead of the fine or imprisonment which this borough was authorized to impose for breach of its by-laws and ordinances, this ordinance prescribes the penalty of a fine and forfeiture of the license. Not one punishment, but two, are imposed, and the latter without any legislative authority. The

case of *Leland* v. *Commissioners*, 13 *Vroom* 375, in which the charter authorized the infliction of a penalty for breach of an ordinance by fine or imprisonment, and the ordinance imposed a penalty of fine or imprisonment or both, at the discretion of the justice—*Held*, that the ordinance was void because of the excess. The leading cases of *Kirk* v. *Nowill*, 1 *T. R.* 118, and *Hart* v. *Mayor of Albany*, 9 *Wend.* 571, followed by many cases in other courts, and elementary treatises, are decisive authorities that forfeitures cannot be added to or substituted for other penalties prescribed by a charter, or without express legislative authority. *Heise* v. *Town Council of Columbia*, 6 *Rich.* (*S. C.*) *L.* 404, is a case like the present, where a fine not exceeding $50 was prescribed by the charter for breach of ordinances, and an ordinance was passed relating to the sale of liquor, imposing a fine of not more than $50, and also a forfeiture of the license. It was held, that the common council had no power to ordain a forfeiture of the license. See 1 *Dill. on Mun. Corp.*, §§ 339, 345, 346. These penalties are not separable, but joined in the ordinance, and a violator of its provisions, on conviction, may be subjected to both. Neither penalty without the other would be in accordance with the terms of the ordinance, and both are without legislative authority in the charter.

Another reason assigned is that the ordinance was not published or posted ás required by the charter. This is not true in fact. After the lapse of so many years since its passage, every reasonable intendment will be made to sustain it, and slight proof, which is all that is usually attainable, will be sufficient to show due publication and notice.

For the reasons that the ordinance was not introduced at a previous meeting, and because the penalty is without legal authority, the second section of the ordinance, which has been enforced against the prosecutors, will be set aside, without costs.